United States District Court
Southern District of Texas
**ENTERED**
June 22, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JONATHAN SAMUEL ROSENSTEIN,　　§
　　　　　　　　　　　　　　　　§
　　　　Plaintiff,　　　　　　　　§
　　　　　　　　　　　　　　　　§
v.　　　　　　　　　　　　　　　§　　CIVIL ACTION NO. H-19-1522
　　　　　　　　　　　　　　　　§
ANDREW SAUL,　　　　　　　　　　§
COMMISSIONER OF THE　　　　　　 §
SOCIAL SECURITY ADMINISTRATION, §
　　　　　　　　　　　　　　　　§
　　　　Defendant.　　　　　　　　§

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] are Defendant's Motion for Summary Judgment (Doc. 13) and Plaintiff's Motion for Summary Judgment (Doc. 14).  The court has considered the motions, the responses, the administrative record, and the applicable law.  For the reasons set forth below, the court **RECOMMENDS** that Defendant's motion be **GRANTED** and Plaintiff's motion be **DENIED**.

### I.  Case Background

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of an unfavorable decision by the Social Security Administration ("SSA") Commissioner ("Commissioner" or "Defendant") regarding Plaintiff's claim for disability insurance benefits under Title II of the Social Security Act ("the Act").

---

[1]    This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  See Doc. 11, Ord. Dated Oct. 29, 2019.

A.  **Medical Evidence and Administrative Proceedings**

Plaintiff was born on December 31, 1959.[2]  In 1985, Plaintiff graduated from college with dual majors in psychology and political science.[3]  For six months in 1988, at age twenty-nine, Plaintiff worked part time at The Menil Foundation, Inc., as a security officer/gallery attendant.[4]   In January 1989, Plaintiff began working the same job in a full-time capacity until he resigned in July 1998 upon inheriting "a large sum of money" from his father.[5]

Plaintiff applied for disability insurance benefits[6] on December 12, 2016,[7] claiming an inability to work since February 1, 1998, due to autism spectrum disorder, attention deficit hyperactivity disorder ("ADHD"), generalized anxiety disorder, social anxiety disorder, and type II diabetes mellitus ("diabetes").[8]  Plaintiff's date last insured was December 31, 2003.[9]  The administrative transcript contains very few medical

---

[2]    See Doc. 10, Tr. of the Admin. Proceedings ("Tr.") 253.

[3]    See Tr. 278, 509.

[4]    See Tr. 278, 358-59.

[5]    Tr. 509; see also Tr. 278, 358; Doc. 1, Pl.'s Compl. p. 2.

[6]    According to Plaintiff, he originally also applied for supplemental security benefits under Title XVI of the Act but was determined ineligible and did not appeal that determination.  See Doc. 14, Pl.'s Mem. in Support of Mot. for Summ. J. p. 2.  The record for that claim is not before this court.

[7]    The application itself is dated December 13, 2016.  See Tr. 253.

[8]    See Tr. 47, 55, 253-258.  Plaintiff originally claimed December 31, 1997, as his onset date but changed that date to February 1, 1998, by amendment. See Tr. 253, 257.

[9]    See Tr. 46, 54.

records dated prior to December 31, 2003, and none reflected the diagnosis of or treatment for any of the conditions that Plaintiff asserted were disabling.[10]

At a psychological evaluation in October 2013, Plaintiff reported that he thought that, at age twelve, he had been taken to a psychiatrist who admitted him into a hospital but he could provide no diagnostic or treatment details.[11]   Plaintiff also reported to Katherine A. Loveland, Ph.D., ("Dr. Loveland"), the evaluating psychologist, that he thought that, in his early thirties, he had been evaluated by a psychiatrist who administered a verbal test that yielded normal results.[12]   At the 2013 evaluation, Dr. Loveland administered multiple assessments, including several designed to detect indications of autism spectrum disorder.[13]  Dr. Loveland diagnosed Plaintiff with autism spectrum disorder, ADHD, generalized anxiety disorder, and social anxiety disorder.[14]

In early March 2017, the SSA found Plaintiff not disabled at the initial level of review.[15]   The reviewing consultant, Lee Wallace, PhD., ("Dr. Wallace"), determined that Plaintiff did not

---

[10]     See Tr. 783-90, 835-38.

[11]     See Tr. 509.

[12]     See id.

[13]     See Tr. 510-15.

[14]     See Tr. 515.

[15]     See Tr. 46-51, 53, 64-68.

meet or equal the criteria of any impairment identified in the regulations as presumptively disabling[16] (the "Listings"), specifically addressing Listing 12.10 (autism spectrum disorder).[17] Dr. Wallace found no medical evidence on which disability during the relevant time could be assessed.[18]  Noting also that Plaintiff had graduated from college and had held gainful employment for several years, Dr. Wallace determined that insufficient evidence existed to support a finding of disability prior to Plaintiff's date last insured.[19]  In late June 2017, the SSA again found Plaintiff not disabled upon reconsideration.[20]  At that time, Randal Reid, M.D., evaluated Plaintiff's file and concurred with Dr. Wallace regarding the absence of evidence relevant to the period of alleged disability.[21]

Thereafter, Plaintiff requested a hearing before an ALJ.[22]  The ALJ granted Plaintiff's request and scheduled the hearing on July 13, 2018.[23]

In April 2018, a friend who had known Plaintiff since 2011

---

[16]    See 20 C.F.R. Pt. 404, Subpt. P, App. 1.

[17]    See Tr. 49.

[18]    See id.

[19]    See Tr. 49-50.

[20]    See Tr. 54-62, 70-73.

[21]    See Tr. 57-58.

[22]    See Tr. 74-76.

[23]    See Tr. 208.

provided a statement about Plaintiff's limitations during their friendship.[24]   The record also contains several retrospective statements about Plaintiff's behavior as a child.   A childhood friend who was about the same age as Plaintiff and one of Plaintiff's younger cousins provided statements in 2018 about their recollections of Plaintiff's difficulties as a child.[25]

Another childhood friend, Guy Fried, M.D., ("Dr. Fried"), became a medical doctor and has worked for thirty years in physical medicine rehabilitation, currently as the chief medical officer at a rehabilitation hospital in Pennsylvania.[26]   In 2018, he offered the following opinions:

> I have been asked to comment on [Plaintiff] and his lifelong disability.   I am in a unique position to do this as I have known Jonathan since I was about 5 years old and he was 4 years old. . . .   His family were [sic] friends with my family.   I have been able to watch [Plaintiff] grow up and struggle with various conditions that in my opinion would be diagnosed as Asperger's syndrome today.   In my, opinion, he has had this all his life.   It has just become more evident over time.[27]

Dr. Fried explained how his credentials qualified him to opine on those matters, stating that he was "in a unique position to diagnose as [he] was a Psychology undergraduate before receiving

---

[24]     See Tr. 371-72.

[25]     See Tr. 363-65.

[26]     See Tr. 647.

[27]     Id.

[his] medical degree at Yale."[28]

Dr. Fried offered his opinion that Plaintiff "has many of the classic signs and symptoms of Asperger's syndrome," identifying multiple of Plaintiff's behavioral traits as indicative of the syndrome.[29]  Although Dr. Fried described Plaintiff's symptoms in the present tense, he did not: (1) reveal when he last interacted with Plaintiff; (2) indicate that he ever examined Plaintiff in a professional capacity or clinically evaluated him; or (3) tie his descriptions of Plaintiff to any particular year.[30]  Rather, Dr. Fried offered the sweeping opinion that Plaintiff had had the symptoms "for a lifetime."[31]

In an undated affidavit, Dr. Fried provided more detail about Plaintiff's childhood.[32]  Dr. Fried stated that Plaintiff's parents had Plaintiff "tested and at the time it went undefined for quite awhile."[33]  Dr. Fried added, "Getting past the stigma of 'autism' in the 1960s left his parents discouraged.  The first time I had ever heard the phrase 'Asperger Syndrome' was when it was used about [Plaintiff]."[34]

---

[28]   Id.

[29]   Id.

[30]   See id.

[31]   Id.

[32]   See Tr. 346.

[33]   Id.

[34]   Id.

The record also contains a 2018 retrospective employee functional capacity assessment about Plaintiff's work in 1988 to 1998 completed by the director of facility and security at The Menil Foundation, Inc.[35]  Among other opinions, the director explained, during Plaintiff's employment more than twenty years earlier, Plaintiff received accommodations and was not held to the same standard as other staff who held the same job as Plaintiff.[36] In June 2018, Jewish Family Services provided contemporaneous information about Plaintiff's mental residual functional capacity, his educational and vocational history, and his employability, among other topics.[37]

At the hearing on July 13, 2018, Plaintiff and a vocational expert testified.[38]  After the hearing, Dr. Loveland provided a written statement in support of Plaintiff's disability application, writing:

> I can tell you that in my professional opinion as an internationally known expert on adults with Autism Spectrum Disorder, [Plaintiff's] disabilities have been present well before 15 years ago (2003) and were fully as disabling before as they are now.  He is, and always has been, in need of extensive support from other people in order to function.  He is in my opinion fully disabled, with a condition that has been present from childhood

---

[35]     See Tr. 358-62.

[36]     See id.

[37]     See Tr. 366-68.

[38]     See Tr. 23-45.

onward to the present.[39]

B.  **Commissioner's Decision**

On October 26, 2018, the ALJ issued an unfavorable decision.[40] The ALJ found that Plaintiff had not engaged in substantial gainful activity from February 1, 1998, the alleged onset date, through December 31, 2003, his date last insured.[41]   The ALJ recognized autism spectrum disorder and ADHD as medically determinable impairments, despite the absence of time-relevant medical evidence.[42]   The ALJ explained that the finding was based only on the medical fact that autism spectrum disorder and ADHD "are developmental disorders that occur early in life."[43]   On the other hand, ALJ found generalized anxiety disorder, social anxiety disorder, and diabetes not medically determinable because the record contained no evidence of the diagnoses, symptoms, or treatment for these conditions.[44]

Regarding severity of autism spectrum disorder and ADHD during the relevant period, the ALJ stated that there was "absolutely no medical evidence to show how severe they were at the date last

---

[39]     Tr. 864.

[40]     See Tr. 10-17.

[41]     See Tr. 12.

[42]     See Tr. 13.

[43]     Tr. 14.

[44]     See id.

insured[.]"[45]  The ALJ stated that, had the conditions been severe during that time, Plaintiff would have had "substantial records showing treatment for the conditions[]" because their "effects would be so bothersome [as to] compel the sufferer to seek help."[46]

Although the ALJ found Dr. Loveland's opinion helpful, he gave it little weight with regard to assessing Plaintiff's disability status during the relevant period because Dr. Loveland evaluated and treated Plaintiff more that a decade after his date last insured.[47]  In particular, the ALJ found speculative Dr. Loveland's opinion that Plaintiff's mental conditions were fully as disabling prior to 2003 as they were a decade later when she evaluated and began treating him.[48]  The ALJ also found that the mental residual functional capacity assessment completed by a social worker at Jewish Family Services was entitled to little weight with regard to the period under adjudication because it occurred almost fifteen years after the date last insured.[49]  The ALJ gave the opinions of the consultants who reviewed Plaintiff's file at the initial and reconsideration levels significant weight because of the lack of evidence establishing a medically determinable impairment prior to

---

[45]     Id.

[46]     Id.

[47]     See Tr. 14.

[48]     See Tr. 15.

[49]     See id.

the date last insured.[50]

The ALJ also considered the statements prepared by Plaintiff's family and friends, finding them to be questionable because the individuals were "not medically trained to make exacting observations as to dates, frequencies, types, and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms[]" and the insights were not offered by "disinterested third party witness[es] whose reports of restriction in functioning would not tend to be discolored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges."[51]

The ALJ addressed the four broad areas of mental functioning utilized in evaluating mental disorders.[52]  He found that no objective medical evidence indicated that Plaintiff had limitations during the relevant period in: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; or (4) adapting or managing himself.[53]  The ALJ concluded that Plaintiff's "medically determinable mental impairments caused no more that 'mild' limitation in any of the functional areas" and, thus, were not

---

[50]    See id.

[51]    Id.

[52]    See Tr. 15–16.

[53]    See id.

10

severe.[54]

Because the ALJ found that Plaintiff failed to meet his burden to demonstrate that he had any severe impairment prior to December 31, 2003, the ALJ found that Plaintiff was not disabled at any time from February 1, 1998, the alleged onset date, to December 31, 2003, the date last insured.[55]

On November 9, 2018, Plaintiff appealed the ALJ's decision.[56] On February 12, 2019, the Appeals Council denied Plaintiff's request for review, thereby transforming the ALJ's decision into the final decision of the Commissioner.[57]   After receiving the Appeals Council's denial, Plaintiff timely sought judicial review of the decision by this court.[58]

## II.  Standard of Review and Applicable Law

The court's review of a final decision by the Commissioner denying disability benefits is limited to the determination of whether: 1) the ALJ applied proper legal standards in evaluating the record; and 2) substantial evidence in the record supports the decision.  Waters v. Barnhart, 276 F.3d 716, 718 (5th Cir. 2002).

---

[54]    Tr. 16.

[55]    See Tr. 11, 17.

[56]    See Tr. 250-51.

[57]    See Tr. 1.

[58]    See Tr. 2; Doc. 1, Pl.'s Compl.  On April 15, 2019, Plaintiff timely filed an application to proceed in forma pauperis that was granted on April 23, 2019.

11

A.  **Legal Standard**

In order to obtain disability benefits, a claimant bears the ultimate burden of proving he is disabled within the meaning of the Act.  Wren v. Sullivan, 925 F.2d 123, 125 (5th Cir. 1991).  Under the applicable legal standard, a claimant is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(a); see also Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994).  The existence of such a disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings.  42 U.S.C. § 423(d)(3), (d)(5)(A); Jones v. Heckler, 702 F.2d 616, 620 (5th Cir. 1983).

To determine whether a claimant is capable of performing any "substantial gainful activity," the regulations provide that disability claims should be evaluated according to the following sequential five-step process:

> (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment;" (3) a claimant whose impairment meets or is equivalent to [a Listing] will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled;" and (5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and [RFC] must be

considered to determine whether he can do other work. Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994); see also 20 C.F.R. § 404.1520.  The analysis stops at any point in the process upon a finding that the claimant is disabled or not disabled. Greenspan, 38 F.3d at 236.

## B.  **Substantial Evidence**

Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Biestek v. Berryhill, ____ U.S. ____, 139 S. Ct. 1148, 1154 (2019)(internal quotations marks omitted).  "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high."  Id.  It only requires "more than a mere scintilla."  Id.

The Commissioner has the responsibility of deciding any conflict in the evidence.  Id.  If the findings of fact contained in the Commissioner's decision are supported by substantial record evidence, they are conclusive, and this court must affirm.  42 U.S.C. § 405(g).

Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the court overturn it.  See Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).  In applying this standard, the court is to review the entire record, but the court may not reweigh the evidence, decide the issues de novo, or substitute the court's judgment for the

13

Commissioner's judgment.  Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999).  In other words, the court is to defer to the decision of the Commissioner as much as is possible without making its review meaningless.  Id.

### III. Analysis

Plaintiff requests judicial review of the ALJ's decision to deny disability benefits.  In his motion, Plaintiff concedes that he was diagnosed with autism in 2013 but "alleges that his disability existed at the time of birth."[59]  This is the central argument upon which Plaintiff's entire appeal rests.

Within  Plaintiff's motion and his response to Defendant's motion, Plaintiff argues that the ALJ erred in several ways: (1) by not affording Dr. Loveland's opinions controlling weight; (2) by not giving more weight to Dr. Fried's retrospective opinions or to the other retrospective statements by individuals who knew Plaintiff as a child; (3) by finding substantial evidence in support of his determination that Plaintiff was not disabled prior to December 31, 2003; (4) by not finding that Plaintiff met Listing 12.10 prior to December 31, 2003; (5) by not complying with Social Security Ruling ("SSR") 96-8p in determining Plaintiff's RFC; and (6) by not considering Plaintiff's eligibility for benefits available to disabled adult children.  The last three of these arguments depend on favorable outcomes concerning one or more of

---

[59]     Doc. 14, Pl.'s Mem. in Support of Mot. for Summ. J. p. 4.

the first three arguments.  As Plaintiff could produce no objective medical evidence of the diagnosis and treatment of any alleged condition or any evidence of his functionality[60] during the relevant time period, Plaintiff relies on retrospective medical and non-medical opinions in support of his arguments.  Defendant argues that the ALJ's decision is legally sound and is supported by substantial evidence.

Discussing the regulatory factors that an ALJ must consider before giving a treating physician's less than controlling weight, Plaintiff contends that the ALJ erred in affording Dr. Loveland's opinions little weight.  Two flaws undermine Plaintiff's argument.  First and foremost, Dr. Loveland was not Plaintiff's treating physician *during the relevant period*.  In fact, she did not meet Plaintiff for nearly a decade after his date last insured.  As such, her opinions were not entitled to controlling weight.

Second, the ALJ properly evaluated Dr. Loveland's opinion and provided good reasons for affording it little weight.  Dr. Loveland offered two opinions regarding Plaintiff's condition and functionality prior to December 31, 2003.  She opined that Plaintiff carried diagnoses of developmental disorders that would

_____

[60]    Plaintiff presented evidence of his functionality in employment from 1989 to 1998.  This evidence is irrelevant.  At the time of the assessment, Plaintiff was engaged in substantial gainful activity under the applicable regulations.  See 20 C.F.R. §§ 404.1572, 404.1574, 404.1575.  As the ALJ noted in his opinion, an individual who is engaged in substantial gainful activity is not disabled regardless of how severe his impairments are.  See Tr. 11; Bowling, 36 F.3d at 435.  Therefore, during the period addressed by Plaintiff's former employer, Plaintiff was not disabled at step one of the analysis regardless of the severity of his impairments.

have been present in childhood.  The ALJ credited this opinion and found that, despite no evidence of diagnosis or treatment of either autism spectrum disorder or ADHD in Plaintiff's pre-2004 medical history, those conditions were medically determinable impairments which Plaintiff suffered during the relevant period.  Dr. Loveland's other opinion was that Plaintiff's "disabilities . . . were as fully disabling before [2003] as they [were in 2003 and beyond]."  That was unmistakably an opinion on disability, which is a determination reserved to the ALJ because it is dispositive of the case.  See 20 C.F.R. § 404.1527(d)(1)(applying to claims filed before March 27, 2017); SSR 96-5p, 1996 WL 374183, at **2, 5.

Relatedly, Plaintiff contends that Dr. Fried's statements were entitled to greater weight.  To be clear, Dr. Fried was not a medical source, much less an examining or treating physician, and his opinions were not objective.  In an attempt to fill the record void on Plaintiff's functionality prior to his date last insured, Plaintiff offered statements from childhood friends, including Dr. Fried.  These were not the opinions of trained medical professionals but reminiscences of adults who had played as children with Plaintiff decades earlier.  They were clouded by an admitted fondness for Plaintiff.  The ALJ considered these opinions and disregarded all of them for the stated reasons.

In addition to arguing that the ALJ made legal errors in reaching his conclusion that Plaintiff was not disabled, Plaintiff

contends that substantial evidence does not support the finding. As explained above, the court's duty with regard to substantial evidence is confined to assessing whether adequate relevant evidence reasonably supports the ALJ's conclusion. See Biestek, 139 S. Ct. at 1154.  That threshold is so low that the decision is to be upheld even if contrary evidence preponderates.  See Copeland v. Colvin, 771 F.3d 920, 923 (5th Cir. 2014)(defining substantial evidence as "more than a mere scintilla and less than a preponderance")(quoting Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005)); see also 42 U.S.C. § 405(g)(stating that a decision supported by substantial evidence should not be disturbed).

To prove that autism spectrum disorder and ADHD were severe impairments during the relevant period, Plaintiff bore the burden of providing medical and other evidence that they significantly limited his ability to do basic work activities.  See 20 C.F.R. § 404.1522.  A diagnosis alone is insufficient to establish that an impairment has a significant impact on that individual's functional capacity.  Cf. Johnson v. Sullivan, 894 F.2d 683, 685 (5th Cir. 1990) (referring to a diagnosis as only part of the evidence that must be considered).  Plaintiff failed to meet his burden of proving that his impairments were severe.

Two psychological consultants reviewed Plaintiff's file and determined that Plaintiff had not produced sufficient evidence to establish disability, noting that the completion of college and

multiple years of substantial gainful activity militated against a finding of disability.  With the supporting explanations, the ALJ was allowed to accord these opinions significant weight.  <u>See</u> 20 C.F.R. § 404.1527(c)(3); SSR 96-5p, 1996 WL 374183, at *6.  They alone rose above the low threshold of substantial evidence.

Because the ALJ concluded at step two of the analysis that Plaintiff was not disabled, he did not continue to the consideration of whether Plaintiff met a Listing or to assess Plaintiff's RFC.  <u>See</u> <u>Greenspan</u>, 38 F.3d at 236.  Accordingly, the court finds Plaintiff's arguments on those issues to be meritless. Plaintiff's final argument that he should have been considered for benefits as an adult disabled child also fails because he did not prove that he was disabled as a child.

### IV. Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendant's motion be **GRANTED** and Plaintiff's motion be **DENIED.**

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the

18

United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 22nd day of June, 2020.

Nancy K. Johnson
United States Magistrate Judge